**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

_____
                              :
GREGORY MULLINGS,             :
                              :     Civil Action No.
            Petitioner,       :     07-2525 (WJM)
                              :
         v.                   :     **O P I N I O N**
                              :
MICHEAL CHERTOFF, et al.,     :
                              :
            Respondents.      :
_____:

**APPEARANCES:**

> GREGORY MULLINGS, Petitioner pro se
> #37461031
> Hudson County Correctional Center
> Kearny, New Jersey  07032

**WILLIAM J. MARTINI, District Judge**

On May 30, 2007, Petitioner GREGORY MULLINGS (hereinafter "Petitioner"), a native of Jamaica who entered the United States in 1981, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (hereinafter "DHS")[1] at Hudson County Correctional Center.

---

1

The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and

Page -1-

Dockets.Justia.com

For the reasons set forth below, the Court will dismiss the petition.

## BACKGROUND

Although Petitioner's application is drafted in a patchy matter obstructing understanding of finer details of his claims, Petitioner's lack of pleading finesse does not prevent this Court from discerning the following key allegations:

At a certain unspecified date, Petitioner was convicted for an aggravated felony. See Pet. at 3. Following his conviction, Petitioner filed his application for post-conviction relief (hereinafter "PRC") challenging the conviction, and Petitioner's PRC is currently pending. See id. Petitioner: (a) is scheduled to appear before the judge presiding over Petitioner's PRC action on August 13, 2007, and (b) hopes to have his criminal conviction overturned. See id. at 3-4.

Petitioner was taken in DHS custody on January 18, 2007, and remains in custody of DHS being adjudicated a removable alien (apparently, on the basis of his conviction as an aggravated felon). See id. at 2. Petitioner elected not to appeal the decision of his immigration judge (hereinafter "IJ") to the Board of Immigration Appeals (hereinafter "BIA") because "the average

---

Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

appeal takes approximately four months," and Petitioner deems this waiting period too lengthy. See id.

On May 15, 2007, Petitioner's IJ held Petitioner's bond hearing and denied Petitioner's request to be released on bond. See id. at 3.

Petitioner now challenges his detention on the following three grounds: (1) Petitioner believes that he should not be detained because his PRC is pending and, if he is successful in his PRC application, the criminal charges underlying Petitioner's removal would be eliminated, hence invalidating his order of removal and the ensuing detention in anticipation of removal, see id. at 3; (2) "Petitioner has been in detention for approximately six months and sees no significant likelihood of removal in the foreseeable future," see id.; and (3) Petitioner's continued detention without a bond hearing violates Petitioner's Due process rights. See id. at 5-7, 10.

**JURISDICTION**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be

"in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner is detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

## STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

### I.  Legal Framework for an Alien Under a Final Order of Removal

Since it appears that Petitioner's order of removal was entered by Petitioner's IJ, the petition could be construed as Petitioner's contention that his current detention is in excess of Petitioner's "presumptively reasonable period of removal." See Pet. at 2 (apparently relying on Zadvydas v. Davis, 533 U.S. 678,

700-701 (2001), and related cases).  Petitioner errs.

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon or the time to appeal expired); or (2) if the *removal order* is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

If--during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien-- the alien is subjected to a qualifying superceding event, e.g., the alien released from confinement related to a criminal offense files an application seeking judicial review of the alien's removal order, or if this alien is detained/confined on a new charge or on

parole revocation and then re-released, such superceding event start the alien's removal period anew. See 8 U.S.C. § 1231(a)(1)(B).

> [There cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE] 's authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject

to conditions of release. See id. § 1231(a)(6). However, in Zadvydas, the Supreme Court held that aliens may be detained further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention"). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month " presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

Since it appears that Petitioner's order of removal was entered by Petitioner's IJ on or about January 18, 2007, and

Page -7-

Petitioner elected not to appeal his order of removal to the BIA, Petitioner's order of removal became final when Petitioner's time to seek BIA's review expired, i.e., 30 days after the entry of Petitioner's removal order (or, speaking in terms of dates, on or about February 18, 2007). See 8 U.S.C. § 1231(a)(1)(B)(I). Since Petitioner's order of removal is not being reviewed by any court, it appears that Petitioner's current presumptively reasonable period of detention began to run on February 18, 2007, and, so far, was not superceded by another, later, removal period.[2]  See 8 U.S.C. § 1231(a)(1)(B).

Consequently, Petitioner's instant Zadvydas period is to expire on or about August 18, 2007, that is, in about two and a

---

[2] The fact that Petitioner is challenging his underlying conviction is of no consequence to calculation of Petitioner's current presumptively reasonable period of detention. See 8 U.S.C. § 1231(a)(1)(B). Petitioner cites two cases in support of his proposition that his order of removal cannot be deemed final in view of his pending PRC. See Pet. at 3 (citing Welch v. Ashcroft, 293 F.3d 213 (4th Cir. 2002), and Pickering v. Gonzales, 454 F.3d 525 (6th Cir. 2006) (Petitioner cites the case as "465 F.3d," a non-existing citation)). However, Welch does not lend any support to Petitioner's proposition (rather the case holds that an alien's Due Process rights are violated if the alien is detained for 422 days *without any bail hearing*), see Welch, 293 F.3d 213, and Pickering is flatly inapposite to the case at bar, since, in Pickering, the issue examined by the court was that of removability of an alien *whose foreign conviction was already reversed*. Reviewing the BIA's ruling, the Sixth Circuit clarified that--for the government to carry its burden in establishing that an *already overturned* foreign conviction remains valid for immigration purposes, the government must prove that the alien's foreign conviction was reversed by the foreign court solely to avoid adverse immigration consequences, i.e., to allow the alien to enter/remain in the United States. See Pickering, 454 F.3d 525.

half months after issuance of this Opinion. See Zadvydas v. Davis, 533 U.S. at 701. Therefore, if Petitioner is currently detained under a final order of removal, his detention is fully lawful, and his Petition should be dismissed.

**II. <u>Legal Framework for an Alien Not Under an Order of Removal</u>**

If this Court is to hypothesize that Petitioner's patchy petition so conflates the facts to create a wrongful impression that Petitioner's order of removal was actually entered (while, in fact, no such order was yet issued), Petitioner's current detention is still valid.

The Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent. See Zadvydas, 533 U.S. at 699. That given, a detention of an alien does not necessarily violate that alien's constitutional rights. As it should be clear from the discussion provided in the previous section of this Opinion, the scheme set forth by 8 U.S.C. § 1226 envisions a number of different scenarios that could be broadly subdivided into two key categories: (1) pre-removal-order detentions; and (2) post-removal-order ones. The cut-off point distinguishing the two categories is the beginning of the "removal period." See 8 U.S.C. § 1231(a)(1)(B).

If Petitioner's order of removal was yet not entered, Petitioner's detention falls within the category of pre-removal-order detentions.

The Supreme Court has upheld mandatory pre-removal-order detention of criminal aliens under 8 U.S.C. § 1226(c). See Demore v. Kim, 538 U.S. 510, 516-17 (2003). In so doing, the Court relied upon more than a century of precedent "recogniz[ing] detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Id. at 523 (citations omitted). The Court also emphasized that pre-removal detention typically lasts only a few months and, by definition, has a finite ending point, namely, the completion of the removal proceedings. See id. at 526-531.

Since, in the instant case, the petition indicates that Petitioner's potential removal is based on Petitioner's prior criminal offense, Petitioner's detention is lawful under the holding of Demore v. Kim, 538 U.S. 510.[3]  Therefore, even with

---

[3] Alternatively, even if this Court is to fancy that, somehow, Petitioner's petition misrepresents the fact that Petitioner's removal is pending in view of Petitioner being a criminal alien, Petitioner's current detention as a pre-removal-order detainee would still be valid under 8 U.S.C. § 1226(a). If one is adjudicated "non-criminal alien[], . . . the Attorney General retains discretion to decide whether [such alien] should be detained" while this alien is awaiting conclusion of his removal proceedings. See Patel v. Zemski, 275 F.3d 299, 305 (3d Cir. 2001), overruled on other grounds, Demore, 538 U.S. 510. Moreover, the discretionary power of the Attorney General has only one temporal limitation, namely, the conclusion of removal proceedings. See id.

allowances of this Court hypothesizing that Petitioner's order of removal has not been entered, Petitioner's Petition has to be dismissed.

### III. Legal Framework for Challenges to Orders of Removal

Furthermore, if this Court is to construe Petitioner's patchy submission as a challenge to Petitioner's order of removal (based on Petitioner's hopes to prevail on his PRC application and, thus, to eliminate the criminal conviction underlying his removal), Petitioner's application has to be dismissed for lack of jurisdiction.

Any challenge to an order of removal must be presented by petition for review with the appropriate Circuit Court of Appeals, pursuant to Section 106(a)(5) of the REAL ID Act of 2005.[4] "Under the new judicial review regime imposed by the REAL ID Act, a petition for review is now the sole and exclusive means of judicial

---

[4] Section 106(a)(5) of the REAL ID Act of 2005 reads:

> Notwithstanding any other provision of law (statutory or non-statutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall he the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e) [relating to orders issued under 8 U.S.C. § 1225(b)(1)].

review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1)." Bonhometre v. Gonzales, 414 F.3d 442, 445 (3d Cir. 2005); see also 8 U.S.C. § 1252(a)(5) (1999 & Supp. 2005). The circuit courts' jurisdiction was also enlarged to include consideration of constitutional claims or questions of law raised in a criminal alien's petition for review. See 8 U.S.C. § 1252(a)(2)(D)(2005). Since this Court is divested of subject matter jurisdiction to issue any decision as to Petitioner's challenge to his removal order, the petition has to be dismissed even if this Court construes the Petition as Petitioner's application for review of his order of removal.

Moreover, in view of the fact that Petitioner's PRC is still pending, and Petitioner cannot substantiate his instant challenges to his order of removal until and unless a favorable determination is entered by Petitioner's PRC judge, this Court finds that, at this juncture, it would not be in the interests of justice to forward Petitioner's application to any court of appeals.[5]

**IV.  Challenges to Bond Hearing**

Petitioner's claim that he was deprived of a bond hearing is bewildering in view of the fact that the petition expressly

---

[5] No statement made in this Opinion, however, shall be construed as preventing Petitioner from filing a challenge to his order of removal with the court of appeals of the circuit encompassing the seat of Petitioner's IJ.

acknowledges that Petitioner *actually had a bond hearing just fifteen days prior to his filing of the petition*. See Pet. at 3. While Petitioner might be dissatisfied with the outcome of his bond hearing, the sole fact of Petitioner's dissatisfaction cannot indicate that his Due Process rights were violated. Cf. Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992) (an inmate was not denied due process merely as because an unfavorable decision was reached, since an unfavorable decision per se is not the same as a denial of due process). Therefore, Petitioner's challenge to his detention without being afforded a bond hearing is dismissed.

## CONCLUSION

For the foregoing reasons, Petitioner's Petition will be denied.

An appropriate Order accompanies this Opinion.[6]

                          s/William J. Martini

_____
                          **WILLIAM J. MARTINI**
                          **United States District Judge**
Dated: June 12, 2007

---

[6] This Court, however, notes that Petitioner is free to file another § 2241 petition should, upon expiration of Petitioner's Zadvydas period, Petitioner develop *good evidence* that his removal is no longer reasonably foreseeable.